UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Deutsche Bank National Trust
Company, as Trustee for FFMLT
Trust 2005-FF2, Mortgage
Pass-Through Certificates,
Series 2005-FF2</u>

   v.                                  Civil No. 15-cv-304-JD
                                        Opinion No. 2017 DNH 038
<u>Jennifer L. Pike</u>

<u>O R D E R</u>


Deutsche Bank brought suit against Jennifer Pike seeking a

declaratory judgment that its mortgage on Pike's property is not

subject to her homestead interest or, alternatively, that

Deutsche Bank is entitled to equitable subrogation for the

amount it paid to satisfy a prior mortgage.  Pike brought a

counterclaim to quiet title to the property with respect to her

homestead interest.[1]  Deutsche Bank and Pike both move for

summary judgment.  Pike also moves to withdraw or amend

admissions.


I.  <u>Motion to Withdraw or Amend Admissions</u>

After the motions for summary judgment were filed, Pike

moved to withdraw or amend her admissions, some of which

_____

[1] Pike has dismissed her counterclaims seeking a declaratory
judgment and alleging intentional infliction of emotional
distress.

Deutsche Bank had cited in support of its motion.  The
admissions were by default which was the result of Pike's
failure to file a timely response to Deutsche Bank's requests
for admissions.  Deutsche Bank objects to the motion to withdraw
or amend.

Under Federal Rule of Civil Procedure 36, a party may serve
written requests for admissions on another party.  If the
requests are not answered or objected to within thirty days
after service, the "matter is admitted." Fed. R. Civ. P.
36(a)(3).  "A matter admitted under this rule is conclusively
established unless the court, on motion, permits the admission
to be withdrawn or amended." Fed. R. Civ. P. 36(b).

The court may allow the moving party to withdraw or amend
her admissions "if it would promote the presentation of the
merits of the action and if the court is not persuaded that it
would prejudice the requesting party in maintaining or defending
the action on the merits." Id.  Prejudice for purposes of Rule
36(b) is not simply that the proponent of the admission would
have to prove the fact but instead requires a showing of a
particular difficulty in proving the case such as the absence of
a witness or evidence. Farr Man & Co., Inc. v. M/V Rozita, 903
F.2d 871, 876 (1st Cir. 1990) (citing Brook Village N. Assocs.
v. Gen. Elec. Co., 686 F.2d 66, 70 (1st Cir. 1982)).

In this case, Deutsche Bank sent Pike a request for admissions, which listed twenty-seven statements to admit or deny, on January 7, 2016.  Pike's counsel received the request on January 11, along with other discovery requests.  Her responses were due on February 10.  Pike did not provide responses by that date.  Therefore, the responses were deemed admitted by default on February 11, 2016.

Pike's counsel requested an extension of time to respond to discovery on February 23 but did not address the requests for admissions, which were already admitted by default.  Deutsche Bank's counsel agreed to an additional thirty days, which made the deadline March 11, 2016, to provide other discovery responses.  Pike did not provide the requested discovery by that date either.  Counsel for Deutsche Bank wrote to Pike's counsel on April 11, 2016, stating that Pike's responses to Deutsche Bank's interrogatories and requests for production of documents were overdue.  Counsel warned that if the discovery was not received promptly a motion would be filed.

A week later, counsel for Deutsche Bank agreed to give Pike another ten days to respond to the interrogatories and the requests for documents.  Pike provided her responses to all of the discovery requests, including the request for admissions, on

April 25, 2016.  Pike's deposition was taken on October 27, 2016.[2]

Pike argues that she did not admit Deutsche Bank's request for admissions by default because her responses were timely in light of the extensions she sought and received.  Deutsche Bank points out that Pike had already defaulted on her responses to its request for admissions when her counsel first asked for an extension of time to respond to discovery and that her counsel never indicated that he sought more time to respond to the request for admissions.  Under the circumstances, Pike is deemed to have admitted all parts of the request for admissions by her failure to respond within the time allowed.

In support of allowing her to withdraw the admissions, Pike argues that the case should be tried on the merits, not through defaulted admissions, and that she has evidence to refute the defaulted admissions pertaining to the New Century and First Franklin mortgages.  Deutsche Bank asserts that Pike's new assertion that she did not sign the New Century mortgage "deeply prejudices" it.  Deutsche Bank provides no showing, however, that witnesses or evidence pertaining to that issue are no longer available.  Indeed, both Pike and the notary public who

---

[2] Although Pike's counsel represents that the deposition was taken in November, it is dated October 27, 2016.

4

notarized Pike's signature on the New Century mortgage have been deposed on the issue of whether she signed the mortgage.

Pike's counsel has demonstrated a lack of diligence in responding to discovery and in pursuing the issue of the admissions.  Although counsel was aware in April of 2016 that Deutsche Bank deemed its requests admitted, Pike's counsel waited until February 1, 2017, after Deutsche Bank filed its motion for summary judgment, to ask to withdraw the admissions. The court is reluctant, however, to allow Pike's counsel's sloppy practice to significantly hamper Pike's defense when Deutsche Bank has not shown any specific prejudice that would be caused by withdrawing the admissions.

Therefore, the motion to withdraw is granted.

II.  <u>Motions for Summary Judgment</u>

Deutsche Bank moves for summary judgment on the ground that its security interest in the property at issue, 34 Dogwood Lane, New London, New Hampshire, is not subject to Jennifer Pike's asserted homestead interest or, alternatively, that the homestead interest does not apply to the amount through equitable subrogation.  Pike moves for summary judgment in her favor, asserting that she retains a homestead interest in the property.  The motions are addressed as follows.

A.  Standard of Review

Summary judgment is appropriate when the moving party
"shows that there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a).  "A genuine dispute is one that a
reasonable fact-finder could resolve in favor of either party
and a material fact is one that could affect the outcome of the
case."  Flood v. Bank of Am. Corp., 780 F.3d 1, 7 (1st Cir.
2015).  Reasonable inferences are taken in the light most
favorable to the nonmoving party, but unsupported speculation
and evidence that "is less than significantly probative" are not
sufficient to avoid summary judgment.  Planadeball v. Wyndham
Vacation Resorts, Inc., 793 F.3d 169, 174 (1st Cir. 2015)
(internal quotation marks omitted).

When parties submit "cross-motions for summary judgment,
the standard does not change; [courts] view each motion
separately and draw all reasonable inferences in favor of the
respective non-moving party."  Bonneau v. Plumbers & Pipefitters
Local Union 51 Pension Trust Fund, 736 F.3d 33, 36 (1st Cir.
2013) (internal quotation marks omitted).  Based on that record,
the court then "determine[s] whether either of the parties
deserves judgment as a matter of law on facts that are not
disputed."  Barnes v. Fleet Nat'l Bank, N.A., 370 F.3d 164, 170
(1st Cir. 2004) (internal quotation marks omitted).

C.  Background

In June of 2000, William T. Pike, Jr. married Jennifer L., who became Jennifer L. Pike.  To avoid confusion, the court hereafter will refer to the Pikes by their first names, William and Jennifer.  On August 15, 2001, William bought the property at issue in this case, 34 Dogwood Lane, New London, New Hampshire, from Margaret H. Jenkins.  The purchase was financed in part with a mortgage from Mascoma Savings Bank.

On December 11, 2003, the Pikes refinanced with a loan in the amount of $225,000.00 from New Century Mortgage Corporation that was secured by a mortgage in favor of New Century.  William signed the note, and it appears that William and Jennifer both signed the mortgage.  The mortgage was recorded at the Merrimack County Registry of Deeds on December 17, 2003.  Paragraph twenty-four of the mortgage provides: "Borrower, and Borrower's spouse, if any, release all rights of homestead in the Property and release all rights of curtesy and other interests in the Property."  Doc. 1, Ex. 2.

Signatures for William and Jennifer appear at the end of the mortgage.  Both signatures are notarized.  Nevertheless, Jennifer contends that she did not sign the mortgage and suggests that William or someone else may have forged her

signature.[3]   She asserts that she never discussed refinancing the
property with William and did not know of the mortgage until
after it was closed.

Wendy L. Gregg was the notary public who acknowledged
Jennifer's signature and applied her seal to the
acknowledgement.  During her deposition taken in October of
2016, Wendy Gregg, who is now Wendy Davis, testified that she
worked at Mascoma Savings Bank for five years between 1999 and
2004, where she did customer service, including providing notary
services.  Davis testified that she recognized Jennifer from her
visits to the bank and knew William as a bank customer but did
not know either of them personally.  She also testified that she
did not remember specifically what services she provided to
Jennifer or whether she ever had notarized anything for Jennifer
or William.

Davis reviewed Jennifer's signature on the New Century
mortgage and her acknowledgement.  Davis testified that the
document showed her notary seal, the stamp of her commission's

---

[3] Jennifer notes that her name is typed in a slightly
different font than was used for William's name and that only
William initialed each page of the mortgage.  She also contends
that she was on bed rest in December of 2003 and would not have
gone to the bank to have the document notarized.
Jennifer's additional theory that she could not have signed
the mortgage because she had filed for bankruptcy in 1998 cannot
be considered because she provides no properly supported facts
or legal authority to show her filing would prevent her from
signing a mortgage.

expiration date, and her signature.  Davis also identified her own handwriting in the acknowledgment.  She testified that she had no doubt that all were authentic.[4]

On November 23, 2004, William entered into a second mortgage, secured by the property, to First Franklin Financial Corporation for $269,000.00.  In that document, William again waived his homestead right.  Jennifer did not sign the First Franklin Mortgage.  The New Century mortgage, with an outstanding loan balance of $233,403.87, was discharged on January 25, 2005, with a discharge recorded in the Merrimack County Registry of Deeds.[5]

---

[4] Davis agreed that she had not written a specific date in December and said that was a mistake.

[5] Deutsche Bank asserts that the proceeds of the First Franklin loan were used to pay off the New Century loan but cites only its complaint in support.  See Fed. R. Civ. P. 56(c)(1).  Jennifer points to a HUD-1 Settlement Statement provided by Deutsche Bank in answers to interrogatories and notes that the document shows the First Franklin funds were paid to PCFS Mortgage Resources, not New Century.  In its reply, Deutsche Bank asserts that PCFS Mortgage Resources was a mortgage servicer, and that Litton Loan Servicing took over those servicing obligations in 2004.  Deutsche Bank faults Jennifer for failing to find and prove that connection, without acknowledging that Deutsche Bank bears the burden of showing that the facts on which it relies for summary judgment are undisputed.  Based on the loan servicers' alleged relationship in this case as provided in a footnote in an unrelated case in the Seventh Circuit, Deutsche Bank argues that the First Franklin loan was used to discharge the New Century mortgage loan.  Deutsche Bank has not established that the First Franklin loan was used to satisfy the New Century loan as an undisputed fact.

William transferred the property to the Pike Family Trust
on April 12, 2005, with William and Jennifer as trustees.  The
deed, dated September 15, 2005, was recorded on September 22,
2005.  A year later, on November 27, 2006, William and Jennifer,
as trustees of the family trust, transferred the property to
Jennifer.  The deed was recorded on November 30, 2006.  Jennifer
then transferred the property back to William on February 6,
2007, with the deed recorded on February 9, 2007.

William filed for bankruptcy protection on February 6,
2007.  In the course of the bankruptcy proceeding, on May 26,
2009, the First Franklin mortgage was transferred by assignment
to Deutsche Bank, as trustee for the holders of the First
Franklin Loan Trust.  A second assignment was made on April 15,
2013, recorded on June 20, 2013, to correct the name of Deutsche
Bank as assignee.

Jennifer and William were divorced on July 3, 2013.  The
Final Decree of Divorce provided, with respect to the property,
that it was awarded to Jennifer "free and clear of any interest
of William Pike."  Despite the "free and clear" language, the
decree continued on to state that "Jennifer may remain in the
home until it goes into foreclosure, or Charlie graduates high
school.  The Parties will share equally any equity in the home."
William was required to share equally in the costs of repairs to

the home.  William transferred the property to Jennifer by deed on July 26, 2013.  The deed was recorded on August 8, 2013.

In the meantime, Deutsche Bank began foreclosure proceedings on July 11, 2013.  The foreclosure sale of the property, however, was postponed.

Jennifer brought an action to enjoin the foreclosure sale of the property.  Her petition was denied on summary judgment, which the New Hampshire Supreme Court affirmed on appeal.  Pike v. Deutsche Bank Nat'l Tr. Co., 168 N.H. 40 (2015).  For purposes of the state court action, Jennifer did not dispute that she was a party to the New Century mortgage in 2003 or she and William refinanced the New Century loan with the loan from First Franklin.  Id. at 41.  The state courts did not decide whether Jennifer retained her homestead right in the property, concluding that issue was premature.  Id. at 44-45.

Apparently, the property is still owned and occupied by Jennifer.

D.   Homestead Right

"Every person is entitled to $120,000 worth of his or her homestead, or of his or her interest therein, as a homestead."[6]

---

[6] The parties make no argument as to whether the pre-amendment version should apply to Jennifer's homestead right, if any exists.

RSA 480:1 (as amended in 2015).  The homestead right exists in "[t]he owner and the husband and wife of the owner . . . during the owner's lifetime."  RSA 480:3-a.  "The homestead right is exempt from attachment during its continuance from levy or sale on execution and from liability to be encumbered or taken for the payment, except in [five specific] cases."[7]  RSA 480:4.

The purpose of the homestead right is "to secure to debtors and their families the shelter of the homestead roof, . . . to protect and preserve inviolate a family home, . . . to protect[] the family from destitution, and protect[] society from the danger of its citizens becoming paupers."  Maroun v. Deutsche Bank Nat'l Tr. Co., 167 N.H. 220, 225-26 (2014) (internal quotation marks omitted).  A spouse of a home owner has a homestead right in the family's home as long as he or she occupies the home.  Id. at 226.

The holder of a homestead right, however, may relinquish the right in certain circumstances.  Id.  A deed or mortgage signed by both the property owner and his or her spouse, with the formalities for conveying property, extinguishes the homestead rights of both parties, while a mortgage signed by only one party does not extinguish the homestead right of the other.  Id. at 226; see also RSA 480:5-a.  A properly signed

---

[7] Deutsche Bank does not argue than any of the five exceptions to the homestead right apply in this case.

mortgage encumbers the homestead rights of the signing parties even without an express waiver, but it is limited to the homestead right as to that encumbrance or conveyance. Maroun, 167 N.H. at 226.  In addition, a party may waive his homestead right if done so in an effective and enforceable instrument. Id. at 227-230.

E.   Deutsche Bank's Motion

     Deutsche Bank moves for summary judgment on the grounds that Jennifer's homestead right has been extinguished by a prior conveyance and by the divorce decree.  Alternatively, Deutsche Bank contends that it is entitled to equitable subrogation for the amount it paid to discharge the New Century mortgage, which Deutsche Bank asserts is free of Jennifer's homestead right. Jennifer argues that she never lost her homestead right, which she asserts against Deutsche Bank's interest in the property.

     1.   Conveyance to Trust

     Deutsche Bank contends that William's transfer of the property to the Family Trust in 2005 extinguished Jennifer's homestead right.[8]  Jennifer did not sign the deed that

---

[8] To the extent Deutsche Bank intended to rely on other conveyances to show that Jennifer's homestead right was extinguished, it failed to develop those theories.  Deutsche Bank's general reference to its complaint is insufficient to support a motion for summary judgment.  See Fed. R. Civ. P. 56(a) & (c).

transferred the property to the trust.  Therefore, Deutsche Bank has not shown that the transfer by William to the trust complied with the requirements of RSA 480:5-a for purposes of extinguishing Jennifer's homestead right.  Because Deutsche Bank has not shown for purposes of summary judgment that the conveyance to the trust would extinguish Jennifer's homestead interest, the court need not address the next step of determining whether the safe harbor provision in RSA 480:9 would apply in this case to preserve the homestead interest.

### 2.  Divorce

Deutsche Bank contends that Jennifer lost her homestead right as of July 3, 2013, the date of the divorce decree.  On that day, she was neither the owner of the property nor the spouse of the owner of the property and could not claim a homestead right in the property, even though she continued to live in the house.  See In re Visconti, 426 B.R. 422, 426 (Bankr. D.N.H. 2001) (construing New Hampshire law).  It is not clear what significance that event may have, however.

William conveyed the property to Jennifer on July 26, 2013. As of that date, Jennifer presumably obtained a homestead right in the property as its owner.  Although Deutsche Bank represents that it began foreclosure proceedings before the property was conveyed to Jennifer, it does not explain what effect the

foreclosure proceedings had on her homestead right.  It is
undisputed that no foreclosure sale occurred during that time.

Deutsche Bank also argues that Jennifer waived her
homestead right by agreeing to the divorce decree.  It relies on
the language in the divorce decree that Jennifer could remain in
the house until foreclosure or until her son graduated from high
school.  While that language might imply that Jennifer would
relinquish the house when either of those events occurred, it is
far from specific.  See Maroun, 167 N.H. at 228-30 (explaining
elements of waiver of homestead right).  As such, Deutsche Bank
has not shown that the language in the divorce decree
constitutes an effective and enforceable waiver.

3.  Equitable Subrogation

As an alternative solution, Deutsche Bank contends that it
is entitled to succeed to the position of New Century, through
equitable subrogation, because First Franklin's loan provided
the funds that discharged the loan and mortgage held by New
Century.[9]  Deutsche Bank relies on Jennifer's waiver of homestead
rights that was in the New Century mortgage.  Based on her
waiver, Deutsche Bank contends that it is entitled to recover

_____

[9] As is noted in the background section, Jennifer disputes
that the First Franklin loan was used to satisfy the New Century
loan.

15

the amount paid to discharge the New Century mortgage free of Jennifer's homestead right.

As explained in some detail in the background section, Jennifer denies signing the New Century mortgage.  To be clear, Jennifer does not simply say that she does not remember signing the mortgage or that it is unlikely that she signed the mortgage.  Jennifer stated in her sworn affidavit:  "As more fully stated in my deposition, I never signed the New Century Mortgage. . . .  I did not find out about the New Century Mortgage until well after my ex-husband took it out."  In her deposition, Jennifer stated under oath that she knew nothing about the New Century mortgage when it was originated and that she did not acknowledge the mortgage before a notary public in December of 2003.  She accuses William or someone else of forging her signature and the acknowledgement signed by the notary public.

The evidence Jennifer provides is sufficient to create a disputed fact about the reliability of her signature that cannot be resolved on summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (noting that for purposes of summary judgment the court does not resolve credibility issues).  Therefore, to the extent Deutsche Bank relies on the homestead right waiver in the New Century mortgage, factual disputes

preclude summary judgment based on Deutsche Bank's equitable subrogation theory.[10]

Deutsche Bank argues, nevertheless, that Jennifer is barred by judicial estoppel and res judicata, based on Pike v. Deutsche Bank Nat'l Tr. Co., 168 N.H. 40 (2015), from denying that she signed the New Century mortgage. In Pike, the New Hampshire Supreme Court noted that the parties did not dispute that Jennifer "and her husband granted a mortgage on the property to New Century Mortgage Corporation." Id. at 41. The court did not otherwise address the issue of the New Century mortgage, did not decide who signed the mortgage, and did not decide the issue of Jennifer's homestead right. Id. at 44-45.

In the Pike case in state court, there was no dispute about the New Century mortgage. As a result, Jennifer did not take a position in state court that is inconsistent with her position here nor did the state court decisions determine the validity of Jennifer's signature on the New Century mortgage. See 412 South

---

[10] Deutsche Bank relies on Chase v. Ameriquest Mortg. Co., 155 N.H. 19, 24-28 (2007), to provide the elements of equitable subrogation. In that case, the New Hampshire Supreme Court affirmed the superior court's exercise of equitable powers to allow the defendant to recover the amount of a loan made to satisfy the plaintiff's prior loan, under the doctrine of equitable subrogation, even though the plaintiff's husband forged her signature on the loan obtained from the defendant. Deutsche Bank does not argue that equitable principles used in Chase, beyond the legal standard for equitable subrogation, would apply here.

Broadway Realty, LLC v. Wolters, --- N.H. ---, 147 A.3d 417,
424-425 (2016) (judicial estoppel and res judicata); Finn v.
Ballentine Partners, LLC, 169 N.H. 128, 147 (2016); Kelleher v.
Marvin Lumber & Cedar Co., 152 N.H. 813, 848 (2005) (judicial
estoppel).  Therefore, Deutsche Bank has not shown that
equitable estoppel or res judicata would apply here.

    4.  <u>Summary</u>

    Deutsche Bank has not shown that it is entitled to judgment
in his favor as a matter of law on its claims and on Jennifer's
remaining counterclaim.

F.  <u>Jennifer's Motion</u>

    Jennifer seeks summary judgment in her favor on Deutsche
Bank's claims and on her counterclaim to quiet title to the
property with respect to her homestead right.  She argues in
support, that she obtained a homestead right in the property
because she was married to William when he purchased the
property.  She further argues that she never lost her homestead
right through the subsequent mortgages and conveyances and their
divorce.

    As is explained above in the context of Deutsche Bank's
motion for summary judgment, disputed facts exist as to whether
Jennifer signed the New Century mortgage that released her
homestead rights.  In addition, it remains unclear whether

Deutsche Bank's foreclosure proceedings against the property
after the divorce and before William deeded the property to
Jennifer were sufficient to give Deutsche Bank rights to the
property clear of Jennifer's homestead right.  Because of
material disputed facts, Jennifer has not shown that she is
entitled to summary judgment.

### Conclusion

For the foregoing reasons, the defendant's motion to amend
or withdraw her admissions (document no. 28) is granted.  The
parties' motions for summary judgment (documents nos. 20 and 21)
are denied.

Now that the motions for summary judgment have been
resolved, the parties know what issues remain in the case for
trial.  It appears that only equitable issues remain, which
would be tried to the court.  The parties shall file a joint
brief if they agree and separate briefs if they disagree that
address the question of whether the remaining issues will be
tried to the court or to a jury.  The brief or briefs shall be
filed **on or before March 15, 2017.**

Given the case's long litigation history in state and
federal courts, the time has come to resolve the issues before
even more time and resources are consumed in preparation for

19

trial.  The parties would be well-advised to focus their efforts on resolving this case.

If they have not already done so, the court expects the parties to participate in mediation before trial, even if that requires the trial to be continued.  The parties shall file a joint mediation statement **on or before March 8, 2017,** in which the parties state whether mediation has been held or has been scheduled.

Trial is scheduled for the period beginning on **April 18, 2017,** with the final pretrial conference scheduled for **April 11, 2017, at 11:00 a.m.**  Final pretrial statements and the materials accompanying final pretrial statements under Local Rule 16.2 shall be filed **on or before March 20, 2017,** with objections due no later than **April 3, 2017.**

SO ORDERED.

Joseph DiClerico, Jr.
United States District Judge


March 1, 2017

cc:  Stephen T. Martin, Esq.
     Michael P. Robinson, Esq.