UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Deutsche Bank National
Trust Co., as Trustee

   v.                                           Civil No. 15-cv-304-JD
                                                   Opinion No. 2017 DNH 146

Jennifer Pike


O R D E R

    Deutsche Bank brought suit against Jennifer Pike seeking a declaratory judgment that its mortgage on her property is not subject to her homestead interest or, alternatively, that Deutsche Bank is entitled to equitable subrogation for the amount it paid to satisfy a prior mortgage. Pike brought counterclaims, seeking to quiet title in the property in her favor and a declaratory judgment that she retains a homestead right in the property.[1]

    The case was scheduled for a bench trial. Prior to trial and based on the parties' pretrial filings and briefs, the court dismissed Deutsche Bank's equitable subrogation claim. At the final pretrial conference, counsel for Deutsche Bank asked for an opportunity to move for reconsideration of the decision to deny Deutsche Bank's equitable subrogation claim. Counsel and

---

[1] Pike previously voluntarily dismissed two other counterclaims.

the court agreed that the only other issue in the case was the effect of the divorce decree on Pike's homestead right and agreed that this is a legal issue which does not require a trial.  The court granted Deutsche Bank the opportunity to move for reconsideration of the decision to dismiss its equitable subrogation claim.  Deutsche Bank filed its motion, and Pike filed a response.  The court denied the motion for reconsideration.

As agreed during the final pretrial conference, the court directed Pike to file an additional brief on the issue of the effect of the divorce decree on her homestead right and provided time for Deutsche Bank to respond.  Both the additional brief and the response have been filed.  Therefore, the question of whether the divorce extinguished Pike's homestead interest in the property, the only remaining issue in the case, has been briefed and is ready for ruling.

Background

In June of 2000, William T. Pike, Jr. married Jennifer who became Jennifer L. Pike.  On August 15, 2001, William bought the property at issue in this case, 34 Dogwood Lane, New London, New Hampshire.  The purchase was financed in part with a mortgage from Mascoma Savings Bank.

Thereafter, the property was conveyed between William and Jennifer and to and from a revocable trust and was mortgaged twice after the initial purchase.[2] The last mortgage was granted by William in 2004 to secure a loan from First Franklin Financial Corporation. Jennifer did not sign the First Franklin loan or mortgage. The First Franklin mortgage was assigned to Deutsche Bank in 2009.

Jennifer and William were divorced on July 3, 2013. At that time, William owned the property. Jennifer was living at the property with their son, Charlie.

The Final Decree of Divorce provided, with respect to the property, that it was awarded to Jennifer "free and clear of any interest of William Pike." Despite the "free and clear" language, the decree continued on to state that "Jennifer may remain in the home until it goes into foreclosure, or Charlie graduates high school. The Parties will share equally any equity in the home." William was required to share equally in the costs of repairs to the home.

William transferred the property to Jennifer by deed on July 26, 2013. The deed was recorded on August 8, 2013.

Deutsche Bank's remaining claim seeks a declaratory judgment that its mortgage on the property is not subject to

---

[2] To avoid confusion, Jennifer Pike will be referred to hereafter as Jennifer.

3

Jennifer's homestead interest in the property. In her remaining counterclaims, Jennifer seeks to quiet title in the property in her favor under RSA 498:5-a and seeks a declaratory judgment that she retains her homestead right in the property. William is not and has never been a party in this case.

## Discussion

Deutsche Bank contends that the divorce decree extinguished Jennifer's homestead interest in the property as of July 3, 2013, and that when Jennifer acquired a new homestead interest on July 26, 2013, the new homestead interest was subject to the preexisting First Franklin mortgage. Jennifer contends that the divorce decree did not extinguish her homestead interest in the property because she was living at the property and was granted an interest in the property by the divorce decree. As a result, Jennifer argues, her homestead interest survived the divorce and is superior to the First Franklin mortgage. Deutsche Bank argues that the law of the case doctrine precludes the court from considering Jennifer's theory that her homestead right was not extinguished by the divorce.

A. Law of the Case Doctrine

The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."

Harlow v. Children's Hosp., 432 F.3d 50, 55 (1st Cir. 2005).  A district court, nevertheless, retains the power to reconsider its interlocutory orders.  Perez-Ruiz v. Crespo-Guillen, 25 F.3d 40, 42 (1st Cir. 1994).  For that reason, the law of the case doctrine "'merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.'"  Harlow, 432 F.3d at 55 (quoting Messenger v. Anderson, 225 U.S. 436, 444 (1912)); see also Arizona v. California, 460 U.S. 605, 618-19 (1983).

Deutsche Bank cites a statement in the court's order denying Deutsche Bank's motion for summary judgment.  There, the court paraphrased Deutsche Bank's argument in support of its claim that the divorce caused Jennifer's homestead interest to be secondary to its mortgage because it began foreclosure proceedings before the property was conveyed by William to Jennifer following the divorce.  The court denied summary judgment because Deutsche Bank did not show that beginning foreclosure proceedings, without a foreclosure sale, had any effect on Jennifer's homestead interest.

As such, the cited statement in the court's order was not a legal ruling in the case.  Further, even if the court had made a considered decision on the effect of the divorce on Jennifer's homestead interest, it retains the power to reconsider such a ruling.  Therefore, the law of the case doctrine does not affect

5

the court's power to consider the effect of the divorce on Jennifer's homestead interest in order to decide Jennifer's counterclaim.

B. <u>Effect of Divorce on Jennifer's Homestead Interest</u>

Under New Hampshire law, "[e]very person is entitled to $120,000 worth of his or her homestead, or of his or her interest therein, as a homestead." RSA 480:1 (as amended in 2015). The homestead right exists in "[t]he owner and the husband and wife of the owner . . . during the owner's lifetime." RSA 480:3-a. "The homestead right is exempt from attachment during its continuance from levy or sale on execution and from liability to be encumbered or taken for the payment, except in [five specific] cases" which are not asserted in this case. RSA 480:4.

The statute does not address the effect of divorce on a spouse's homestead right, and the New Hampshire Supreme Court has not addressed the issue. Therefore, the court must consider New Hampshire law and persuasive decisions from other jurisdictions to determine whether it can predict the course the New Hampshire Supreme Court would take if the issue were presented. <u>See</u> Steinmetz v. Coyle & Caron, Inc., --- F.3d ---, 2017 WL 2855787, at *10 (1st Cir. June 29, 2017); Manchester Sch. Dist. v. Crisman, 306 F.3d 1, 14 (1st Cir. 2002).

1. New Hampshire Law Related to the Homestead Right

The New Hampshire Supreme Court has made it abundantly clear that the homestead right is a legislative expression of important public policy. The purpose of the homestead right is "to secure to debtors and their families the shelter of the homestead roof, . . . to protect and preserve inviolate a family home, . . . to protect[] the family from destitution, and protect[] society from the danger of its citizens becoming paupers." Maroun v. Deutsche Bank Nat'l Tr. Co., 167 N.H. 220, 225-26 (2014) (internal quotation marks omitted). Because of the "protective purpose of the homestead right," there is a presumption against waiver of the right. Maroun, 167 N.H. at 228. Absent fraud or other illegality, the homestead law protects the security of families in their homes over "the claims of otherwise deserving creditors." Deyeso v. Cavadi, 165 N.H. 76, 82 (2013).

2. Law in Other Jurisdictions

Other courts that have considered the effect of divorce on a preexisting homestead right have concluded that it depends on the terms of the divorce decree. The Vermont Supreme Court has held that a divorce terminates the homestead right of a party who either does not own the property or does not reside at the

7

property "unless the [divorce] order makes some other specific provision." Condosta v. Condosta, 453 A.2d 1128, 1131 (1982); In re Kadoch, 526 B.R. 626, 635-36 (Bankr. Vt. 2015) (interpreting Condosta). Other courts have held that when the divorce decree does not address the homestead interest but does grant the spouse an interest in the property, such as by requiring the other spouse to deed the property, that interest is sufficient to maintain the spouse's homestead interest as long as she resides in the property. See PNC Bank, N.A. v. Patterman, 64 N.E.3d 725, 729 (Ill. App. 2016); Almanza v. Salas, 2014 WL 554807, at *4-*5 (Tex. App. Feb. 11, 2014). In Arkansas, "divorce will not terminate the homestead right in the head of a household who continues to occupy the homestead." Fitton v. Bank of Little Rock, 365 S.W.3d 888, 892 (Ark. 2010). In Texas, homestead rights are presumed to continue unless shown to have been extinguished, and divorce does not automatically destroy homestead rights. Marincasiu v. Drilling, 441 S.W. 3d 551, 561 (Tex. App. 2014).

    3.   <u>New Hampshire Law Interpreting Divorce Decrees</u>

The interpretation of the language of a divorce decree is a question of law for the court to decide. Matter of Oligny, 169 N.H. 533, 153 A.3d 194, 196 (2016). "[I]n New Hampshire, 'the undivided interest in the real estate [apportioned by a divorce

8

judgment] vest[s] in the [grantee spouse], by the mere force of the decree as effectually as the same could be done by any conveyance of the [grantor spouse] himself.'" United States v. Baker, 2014 WL 4199120, at *3 (D.N.H. Aug. 22, 2014) (quoting Swett v. Swett, 49 N.H. 264, 264 (1870)) (additional internal quotation marks omitted); see also Sommers v. Sommers, 143 N.H. 686, 692 (1999) (statement in divorce decree that one party was awarded the car and that title would be transferred after other events created an immediate property interest); Bonneville v. Bonneville, 142 N.H. 435, 438-39 (1997).

In this case, the divorce decree awarded Jennifer the property "free and clear of any interest of William Pike." The language "exclusive use and possession of the" property was crossed out, reinforcing the court's intent to grant Jennifer ownership, not just use, of the property. The decree required William to deed the property within thirty days of July 3, 2013. William deeded the property to Jennifer on July 26, 2013.

Jennifer's right to the property became effective immediately when the divorce decree issued on July 3, 2013.

4. Holding

The protective purpose of the New Hampshire homestead interest and the weight of authority from other jurisdictions supports a conclusion that the New Hampshire Supreme Court would

hold in this case that the divorce did not extinguish Jennifer's homestead interest. Instead, because the divorce decree awarded the property to Jennifer, who had an existing homestead interest in the property, the homestead interest continued through the divorce as long as Jennifer occupied the property. That result is also supported by the analysis used by the bankruptcy court in this district to determine whether a debtor could claim an exemption based on the homestead right under RSA 480:1 after divorce. See In re Visconti, 426 B.R. 422, 426-27 (Bankr. D.N.H. 2001).

The divorce decree in Visconti, which became final before the bankruptcy proceeding began, granted the debtor "a one-half interest in the proceeds of the homestead after its sale." Id. at 426. The debtor asserted that he had a homestead interest in the property based on that award. The bankruptcy court held that the divorce decree determined what interest in the property it conveyed to the debtor and decided "that the final divorce decree only gave the Debtor a monetary interest in the proceeds of the sale of the home, not an equitable property interest in the actual real estate." Id. at 427. For that reason, the debtor was not entitled to an exemption based on a homestead right. In contrast, Jennifer was awarded the property, which supports her continued homestead interest.

Therefore, the divorce decree at issue here did not extinguish Jennifer's homestead interest, and she continues to have a homestead interest in the property.

B. <u>Deutsche Bank's Claim and Jennifer's Counterclaims</u>

Deutsche Bank's remaining claim in the case seeks a declaratory judgment that its mortgage on the property is not subject to Jennifer's homestead interest. Jennifer's remaining counterclaims are to quiet title in the property in her favor pursuant to RSA 498:5-a and for a declaratory judgment that she retains a homestead interest in the property.

As is explained above, the divorce did not extinguish Jennifer's preexisting homestead interest in the property, which continues as long as she occupies the property. Jennifer's homestead interest is prior and not subject to Deutsche Bank's mortgage. Therefore, Jennifer may assert her homestead interest in the property under RSA 480:1, if and when Deutsche Bank forecloses on the property.

The parties have disputed which version of RSA 480:1 applies to Jennifer's homestead right, arguing that different amounts are protected. Because Deutsche Bank has not yet foreclosed, Jennifer has not yet asserted the right under RSA 480:1. If a foreclosure occurs, Jennifer will be entitled to

11

the amount protected under the version of RSA 480:1 that is in effect at that time.

In Count I, Jennifer brings a quiet title action pursuant to RSA 498:5-a. In support, she asserts that Deutsche Bank holds no enforceable right to the property because of her homestead interest. Jennifer addressed the quiet title counterclaim in her trial brief, arguing that when deeds violate a homestead right, the transfer is void. She asserts in support of her claim that "[t]he deeds are not ambiguous. None of the transfers contained a provision waiving Jennifer's homestead rights."

As the court has held, Jennifer retains a homestead interest in the property, which entitles her to the amount set by statute as an exemption from attachment, levy, sale, and encumbrance for payment of debts, with certain exceptions. RSA 480:1; RSA 480:4; Maroun, 167 N.H. at 225. Deutsche Bank holds a mortgage on the property, which allows it to invoke the statutory power of sale in the event of default. Mortgage, doc. no. 20-4, at ¶ 22. Jennifer has not provided evidence or any viable argument to show that title to the property can be settled in her exclusive of Deutsche Bank's mortgage interest.

C.  Attorney's Fees

In her trial brief, Jennifer asserted a right to an award of attorney's fees under RSA 361-C:2.  Deutsche Bank objected that any request for fees was premature and that RSA 361-C:2 does not apply to Jennifer.  If Jennifer intends to pursue an award of attorneys' fees, she may make an appropriate motion after judgment is entered.

Conclusion

For the foregoing reasons, the court finds and rules as follows:

Jennifer Pike has a homestead interest pursuant to RSA 480:1 in the property located at 34 Dogwood Lane, New London, New Hampshire.  Deutsche Bank's mortgage on the property located at 34 Dogwood Lane, New London, New Hampshire, is subject to Jennifer's prior homestead interest.

As to Deutsche Bank's claim in Count I, the court finds and rules that Deutsche Bank did not prove the claim, which is dismissed.

As to Jennifer Pike's counterclaim in Count I, the court finds and rules that she did not prove the claim, which is dismissed.

As to Jennifer Pike's counterclaim in Count II, the court finds and rules in favor of Jennifer Pike.

This order resolves all remaining claims and counterclaims. Therefore, the clerk of court shall enter judgment accordingly.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph DiClerico, Jr.
United States District Judge

August 1, 2017

cc: Stephen T. Martin, Esq.
    Kevin P. Polansky, Esq.